**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-23897-ALTMAN**

**EDUARDO SANCHEZ CANIZARES**,

*Petitioner*,

*v*.

**UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT**, *et al.*,

*Respondents*.

______________________________________/

# ORDER

The Petitioner, Eduardo Sanchez Canizares, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1], challenging his immigration detention. Canizares asks us to order his "immediate release under supervision" or, alternatively, to "order a bond or custody hearing." Pet. at 2. The Respondents oppose the Petition, principally because an Immigration Judge ("IJ") denied Canizares's second request for custody redetermination after finding that he was a "flight risk and danger to the community." Resp. [ECF No. 9] at 3. The Respondents also argue that Canizares's medical-care allegations aren't cognizable in habeas and that his claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), is premature. *Id.* at 4–5. After careful review, we **DENY** the Petition in part and **DISMISS** it in part without prejudice.

## THE FACTS

Canizares is a native and citizen of Cuba who, on October 9, 2022, arrived in the United States near Lukeville, Arizona. *See* Amended Notice to Appear ("NTA") [ECF No. 9-1] at 1. He was "not . . . admitted or paroled after inspection by an Immigration Officer." *Ibid.* (cleaned up). Four days later, ICE released Canizares "on [his] own recognizance." Order of Release on Recognizance [ECF No. 9-3] at 1 (cleaned up). On December 7, 2023, DHS issued an amended NTA charging Canizares

as inadmissible under § 212(a)(6)(A)(i) of the Immigration and Nationality Act because he was "present in the United States without being admitted or paroled" after arriving "at any time or place other than as designated by the Attorney General." NTA at 1.

On October 17, 2025, the Miami Police Department arrested Canizares on charges of "Robbery" and "Domestic Violence." Arrest Affidavit [ECF No. 9-4] at 1. ICE encountered him at the Turner Guilford Knight Correctional Center and took him into immigration custody on October 20, 2025. *See* Form I-213 [ECF No. 9-2] at 2; Detention History [ECF No. 9-5] at 1. ICE's Detention History shows that Canizares was shuttled to several immigration-detention locations before arriving at the Miami Federal Detention Center on October 29, 2025, where he remains today. *See* Detention History at 1.

On November 13, 2025, Canizares appeared before an Immigration Judge ("IJ") and "requested a custody redetermination pursuant to 8 C.F.R. § 1236." Nov. 13, 2025 IJ Bond Order [ECF No. 9-6] at 1. "After full consideration of the evidence presented," the IJ denied the request because the immigration court had "no jurisdiction," citing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Ibid.* Both DHS and Canizares "waived" their rights to appeal that decision. *Id.* at 2.

The removal proceedings continued. On April 29, 2026, the IJ found Canizares "inadmissible" under § 212(a)(6)(A)(i), denied his applications for relief from removal, and ordered him removed to Cuba. *See* Apr. 29, 2026 IJ Order [ECF No. 9-7] at 1, 3. Canizares "reserved" his right to appeal, and the IJ advised him that his appeal was due by May 29, 2026. *Id.* at 4. Canizares timely appealed. The BIA's filing receipt reflects that he filed his appeal on May 8, 2026. *See* BIA Filing Receipt [ECF No. 9-8] at 1. As of the time of the Respondents' Response, that appeal remained pending. *See* Resp. at 3.

While his removal appeal was pending, Canizares returned to the immigration court and again "requested a custody redetermination pursuant to 8 C.F.R. § 1236." May 28, 2026 IJ Bond Order [ECF No. 9-10] at 1. This time, the IJ reached the merits. "After full consideration of the evidence

presented," the IJ denied release because Canizares posed a "danger to the community and flight risk." *Ibid.* DHS "waived" its right to appeal, but Canizares "reserved" his, and the IJ advised him that any appeal was due by June 29, 2026. *Id.* at 2. Six days later, on June 3, 2026, Canizares filed this Petition. *See generally* Pet.

## THE LAW

The federal habeas corpus statute, 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Cadet v. Bulger*, 377 F.3d 1173, 1181–82 (11th Cir. 2004) (quoting 28 U.S.C. § 2241(c)(3)). This provision allows persons to challenge the legality of their "immigration-related detention[.]" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("[S]o long as an alien does not challenge a final order of removal, district courts retain jurisdiction under § 2241 to review habeas petitions, including challenges to an alien's detention.")

## ANALYSIS

Liberally construed,[1] the Petition raises three claims. *First*, Canizares contends that his "continued detention is unreasonable and violates due process under the Fifth Amendment," Pet. at 2, and asks us either to order his immediate release or to require another bond hearing, *ibid.* We construe this as a challenge to his continued detention under § 1226(a), notwithstanding the custody redetermination he received on May 28, 2026. *Second*, Canizares alleges that his detention is "causing serious deterioration" of his health because he isn't receiving adequate treatment for his cancer. *Ibid.* We construe this as a challenge to the conditions of his confinement. *Third*, Canizares invokes *Zadvydas*

[1] Federal courts "have an obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework." *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990).

and argues that his continued detention is unlawful because his "removal is not reasonably foreseeable." Pet. at 2. We address each claim in turn.

**I. Canizares's Detention Under § 1226(a)**

The Respondents "do not disagree that Petitioner would be entitled to a bond hearing" under § 1226(a). Resp. at 3. That concession follows from the Eleventh Circuit's decision in *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, 175 F.4th 1258 (11th Cir. 2026), which held that § 1226 governs noncitizens who are "unlawfully in the interior." *Id.* at 1276. Section 1226(a), in turn, permits the Attorney General to release a detainee on "bond" or "conditional parole," 8 U.S.C. § 1226(a)(2), and "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (cleaned up).

Canizares ultimately received that hearing. His first request for custody redetermination was denied on November 13, 2025, because the IJ concluded that the immigration court had "no jurisdiction" under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *See* Nov. 13, 2025 IJ Bond Order at 1. But, after the Eleventh Circuit decided *Hernandez Alvarez*, Canizares returned to the immigration court and again requested a custody redetermination. *See* May 28, 2026 IJ Bond Order at 1. On May 28, 2026, "[a]fter full consideration of the evidence presented," the IJ reached the merits of that request and denied the bond request because, in the IJ's view, Canizares posed a "danger to the community and flight risk." *Ibid.* Canizares filed this Petition six days later. *See generally* Pet. The hearing he asks us to order has therefore already occurred.

To the extent Canizares instead asks us to revisit the IJ's conclusion that he poses a danger or constitutes a flight risk, we can't do that. Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review" and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e);

*see also United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008) ("Here, the district court imposed Velasquez's sentence as if it were reviewing (and overturning) the IJ's decision to release Velasquez on bond . . . [it] lacks the authority to do so." (cleaned up)). *Jennings* likewise explains that § 1226(e) "precludes an alien from challeng[ing] a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." 583 U.S. at 295 (cleaned up) (citing *Demore v. Kim*, 538 U.S. 510 (2003)). The Petition identifies no defect in the procedure the IJ employed on May 28. *See generally* Pet.

Nor does the duration of Canizares's detention entitle him to another hearing. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277 (3d Cir. 2018) ("Borbot cites no authority, and we can find none, to suggest that duration alone can sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a)[.]"). The regulations tell us what a detainee who has already received a bond hearing must do if he wants a second one. "After an initial bond redetermination," the regulations make clear, "an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1212 (9th Cir. 2022) ("When Rodriguez Diaz was already free to raise changed circumstances with the IJ in requesting a new bond hearing, the duration of his detention, by itself, did not create a due process violation."). If Canizares's circumstances materially changed after his May 28 hearing, he could seek another custody redetermination from the IJ. But he isn't entitled to a federal-court do-over simply because the IJ denied his request for bond. We therefore **DENY** Canizares's challenge to his continued detention under § 1226(a).

## II. Canizares's Conditions-of-Confinement Claim

Canizares next alleges that his detention is "causing serious deterioration" of his health because he isn't receiving adequate post-operative treatment for his cancer. Pet. at 2. His colorectal surgeon

explains that Canizares underwent surgery for stage-I colon cancer in December 2024, that he requires continuing surveillance, and that he has "missed critical medical follow-ups, including oncology appointments and scheduled CT scans" while detained. Physician Letter [ECF No. 1-2] at 4.

Although we sympathize with Canizares's condition, "claims challenging the conditions of confinement fall outside of habeas corpus law." *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015). Canizares's allegations implicate the circumstances of his confinement, not the fact or duration of his detention, and therefore aren't cognizable in this § 2241 proceeding. *Id.* at 781 ("Petitioner's § 2241 petition is not the appropriate vehicle for raising an inadequate medical care claim, as such a claim challenges the conditions of confinement, not the fact or duration of that confinement."). We aren't saying that Canizares's allegations about his health or medical treatment are untrue. We're saying only that § 2241 isn't the proper vehicle for litigating those issues. Canizares may try to pursue his conditions-of-confinement claims in a separate civil-rights action. We therefore **DISMISS** this claim without prejudice.

### III. Canizares's *Zadvydas* Claim

Canizares finally argues that his continued detention violates *Zadvydas* because his "removal is not reasonably foreseeable." Pet. at 2. This claim is premature. *Zadvydas* concerns detention after a removal order becomes administratively final. Under § 1231, the removal period begins on "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). And, to state a claim under *Zadvydas*, a detainee must show "post-removal-order detention in excess of six months" and "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Canizares cannot make that showing. Although he describes the IJ's April 29, 2026 decision as a "final order of removal," Pet. at 2, he timely appealed that decision to the BIA on May 8, 2026, *see* BIA Filing Receipt at 1. And, as of June 8, 2026, that appeal remained pending. *See* Herrero Decl.

¶ 7. Canizares therefore wasn't subject to an administratively final removal order when he filed this Petition on June 3, 2026, and his post-removal-order detention had not yet begun.

Nor could six months of post-removal-order detention have elapsed since then. The BIA appeal remained pending as of June 8, 2026, so any administratively final removal order necessarily came later. Even if the order became final immediately thereafter, fewer than six months have elapsed. Canizares therefore cannot establish the "post-removal-order detention in excess of six months" *Akinwale* requires. 287 F.3d at 1052. We thus **DISMISS** his *Zadvydas* claim without prejudice as premature.

* * *

After careful review, we **ORDER AND ADJUDGE** that Eduardo Sanchez Canizares's Petition for a Writ of Habeas Corpus [ECF No. 1] is **DENIED in part and DISMISSED in part without prejudice** as set forth in this Order. All pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on September 29, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Eduardo Sanchez Canizares, *pro se*
counsel of record